IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

KIM LOCKHART                                                               PLAINTIFF

V.                                    4:08CV00508 JMM

PULASKI COUNTY TREASURER'S OFFICE                          DEFENDANT

ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

Pending is the Motion for Summary Judgment filed by the Defendant. Plaintiff has responded to the motion and the Defendant has replied. For the reasons set forth below, the motion is GRANTED.

I.     Facts

The following facts are adopted from the parties' agreed Statements of Fact:

The Plaintiff, Kim Lockhart, an African American, was employed at the Pulaski County Treasurer's Office ("PCTO") from March of 2000 until October 1, 2007. (Ex. A, Pl.'s Depo at p. 9). Debra Buckner is the elected Pulaski County Treasurer and held that position at all times relevant to this lawsuit. (Ex. C, Buckner Aff. at ¶ 2). As the elected official, Debra Buckner is the chief officer of the PCTO. *Id.* Debbye Wolter is the Chief Deputy Treasurer and held that position at all times relevant to this lawsuit. (Ex. B, Wolter Aff. at ¶ 2). Melissa Hayes is currently the Delinquent Tax Manager. She took the position when Sandra Anthony left in June 2007. (Ex. D, Hayes Aff. at ¶ 2). In this capacity, Hayes was the direct supervisor over Plaintiff beginning in June 2007. (Ex. B, Wolter Aff. at ¶ 37).

In 2006, Plaintiff applied for the position of Delinquent Tax Supervisor. (*Id.* at ¶ 4). On December 5, 2006, the PCTO promoted Plaintiff to the position of "Acting Delinquent Tax Supervisor." The promotion took effect on December 11, 2006. (*Id.* at ¶ 5). Plaintiff admitted

in her deposition that the move to Delinquent Tax Supervisor in December 2006 was a promotion. (Ex. A, Pl.'s Depo at p. 18). Prior to being promoted on December 5, 2006, Plaintiff worked as a Delinquent Real Estate Specialist. (*Id.* at p. 16-17). The promotion resulted in increased pay for Plaintiff. (*Id.* at p. 26-27). Plaintiff received her increased pay during the 90-day evaluation period. (Ex. B, Wolter Aff. at ¶ 17).

Plaintiff claimed in her EEOC charge that the PCTO discriminated against her based on her race by including the term "acting" in her title. (Ex. A, Pl.'s Depo at p. 21). Specifically, Plaintiff claimed that the "acting" title caused the employees she supervised to disrespect her. (*Id.* at p. 19). Plaintiff further testified that she believes the "acting" term was based on her race because she is African-American and it happened to her, and because to her knowledge, it did not happen to anyone else. (Ex. A, Pl.'s Depo at p. 24-25). Plaintiff admitted in her deposition that no one ever told her that her race was the reason for the term "acting" in her title. (*Id.* at p. 24). Plaintiff's complaint is primarily based upon an email sent to managers at PCTO. The email reads:

> Good Afternoon, Please be advised that Kim Lockhart has been appointed as Acting Delinquent Tax Collections Supervisor. Kim will be seeking your counsel and support as she assumes her new duties. This appointment is effective Monday, December 11. Congratulations to Kim in her new role. Please advise your staff and let me know if you have any questions. Thanks, Debbye.

(Ex. B-2, attached to Wolter Aff.).

During the course of Debra Buckner's administration, the PCTO promoted several white employees to "acting" positions. (Ex. B, Wolter Aff. at ¶ 18). For example, Shannon Chronister was promoted to the position of "Acting Director of Data Processing." Jackie Cordell was promoted to the position of "Acting Vault Manager." Angie Martin was promoted to the

position of "Interim Acting Manager of Distribution." (*Id.* at ¶ 19). Shannon Chronister, Jackie Cordell and Angie Martin are Caucasian. (Ex. A, Pl.'s Depo at pp. 21-22).

Wolter and Sandra Anthony, an African-American, interviewed Plaintiff for the promotion and made the decision to promote her. (Ex. B, Wolter Aff. at ¶ 6). At the time of the promotion, Wolter addressed the following issues with Plaintiff: (1) Plaintiff's excessive absences; (2) Plaintiff's sometimes uncooperative behavior and the need on several occasions for Wolter to have sessions of conflict resolution with Plaintiff and her manager and other employees of her department; (3) Plaintiff's attitude and communication skills with other employees and taxpayers; (4) Plaintiff's tendency to isolate herself and not be a part of team projects in the department; and (5) Plaintiff's need to improve her grammar in both speaking and writing. (*Id.* at ¶ 8). In the interview with Wolter and Anthony, Plaintiff assured that she would do everything necessary to correct the issues of the past and become a good supervisor. (*Id.* at ¶ 9).

After Plaintiff completed her evaluation period, the term "acting" was removed from her position title on or about March 1, 2007. (*Id.* at ¶ 10). The PCTO had business cards made for Plaintiff that did not contain the term "acting" in her title. (*Id.* at ¶ 11). The business cards read "Kim Lockhart, Delinquent Tax Supervisor." (*Id.* at ¶ 12).

Plaintiff testified that she also believes she was discriminated against based on her pay as a supervisor. (Ex. A, Pl.'s Depo at p. 26). However, Plaintiff admitted in her deposition that she was paid correctly as a supervisor. *Id.* Plaintiff admitted that she applied for and received the job of Delinquent Tax Supervisor and that she received the correct pay raise associated with the promotion. (*Id.* at p. 27). Plaintiff's pay claim is based on her belief that Angie Martin, the Tax

Distribution Manager, was paid too much for the position she held. (*Id.* at p. 27-28). However, Plaintiff admitted that Martin was paid correctly according to Pulaski County policy. (*Id.* at p. 31).

Plaintiff filed her first EEOC Charge of Discrimination on August 17, 2007. (*Id.* at p. 45). Plaintiff testified that she believed the PCTO began reducing her job duties in retaliation for filing her EEOC charge. (*Id.* at p. 42). However, Plaintiff admitted that her job duties allegedly began being reduced on August 15, 2007, before she filed her EEOC charge. (*Id.* at p. 45). She also felt like her supervisors' attitudes changed toward her after she filed her charge.

On September 10, 2007, Melissa Hayes sent an email to Debby Wolter explaining a problem she had with Plaintiff. (Ex. B, Wolter Aff. at ¶ 21; Ex. D, Hayes Aff. at ¶ 3). Hayes reported that she had a meeting with her department on August 30, 2007 about handling writs of execution. (Ex. B, Wolter Aff. at ¶ 22; Ex. D, Hayes Aff. at ¶ 4). Hayes reported that she explained during the meeting how important it was to take notes of the meeting. (Ex. B, Wolter Aff. at ¶ 23; Ex. D, Hayes Aff. at ¶ 5). Hayes further reported that she observed Plaintiff during the meeting and that Plaintiff only wrote down one note. (Ex. B, Wolter Aff. at ¶ 24; Ex. D, Hayes Aff. at ¶ 6). On September 7, 2007, Plaintiff handled a writ of execution account and failed to collect the $44.00 fee associated with the account. (Ex. B, Wolter Aff. at ¶ 25; Ex. D, Hayes Aff. at ¶ 7). When Hayes asked Plaintiff about her failure to collect the fee, Plaintiff responded that she did not have the instruction to do so in her notes from the meeting. (Ex. B, Wolter Aff. at ¶ 26; Ex. D, Hayes Aff. at ¶ 8).

On September 20, 2007, the PCTO held its October tax deadline meeting. (Ex. B, Wolter Aff. at ¶ 27). This annual meeting is one of the most important meetings in the PCTO and is

held in order to prepare for the last few weeks of the tax collection season, which are the busiest weeks of the year for the PCTO. (*Id.* at ¶ 28).  Plaintiff failed to attend the meeting even though she was present at work on the day of the meeting. (Ex. A, Pl.'s Depo at p. 90).  Debbye Wolter notified Plaintiff, as well as other managers and supervisors, via email on September 11, 2007 to attend the meeting.  (Ex. B, Wolter Aff. at ¶ 30).  Plaintiff received the September 11, 2007 email from Wolter.  (Ex. A, Pl.'s Depo at p. 90).

After the meeting, Wolter asked Plaintiff via email why she did not attend the meeting. (Ex. B, Wolter Aff. at ¶ 31).  Although she received Wolter's email, Plaintiff indicated that she did not know which meetings she should attend.  (*Id.* at ¶ 32).  Plaintiff claimed that she thought the meeting was for managers and not supervisors.  (*Id.* at ¶ 33).  In addition, Plaintiff noted that another supervisor, Becky Johnson, did not attend the meeting.  (*Id.* at ¶ 34).  Becky Johnson was on vacation, which had been scheduled prior to the announcement of the meeting, and therefore was not present at work on the day of the meeting. (*Id.* at ¶ 35).

Plaintiff's response was not acceptable to Debra Buckner.  Buckner reprimanded Plaintiff on September 21, 2007.  (Ex. C, Buckner Aff. at ¶ 10).  Buckner found Plaintiff's excuse for not attending the meeting unacceptable for the following reasons: (1) the instruction from Wolter in the September 11, 2007 email was clear; (2) the Chief Deputy (Wolter) instructed Plaintiff to attend and, therefore, she should not have concerned Melissa Hayes with the situation; (3) after the meeting, Plaintiff asked "why someone did not come get me," which Buckner believed was inappropriate; (4) Plaintiff only questioned Hayes about the meeting after she failed to attend; and (5) Hayes' staff is aware that they should honor instruction from the Treasurer and the Chief Deputy. (*Id.* at ¶ 11).  Buckner was aware of the EEOC Charge at the time of the reprimand, but

she believed that Plaintiff was not insulated from discipline for inappropriate behavior and failing to perform her duties professionally. (*Id.* at ¶ 13). Buckner stated in her affidavit that she would not have tolerated the unexcused failure to attend this meeting by any other employee. (*Id.* at ¶ 14). It is undisputed that Plaintiff's unexcused failure to attend the meeting could have been grounds for termination. (*Id.* at ¶ 15).

On September 27, 2007, Plaintiff refused a request from Melissa Hayes that she come into her office and close the door. (Ex. B, Wolter Aff. at ¶ 37; Ex. D, Hayes Aff. at ¶ 9). Plaintiff stated that anything that needed to be said to her could be said with the door open or put in writing. (Ex. B, Wolter Aff. at ¶ 38; Ex. D, Hayes Aff. at ¶ 10). Again, it is undisputed that Hayes could have terminated Plaintiff at this point for insubordination. (Ex. B, Wolter Aff. at ¶ 39; Ex. D, Hayes Aff. at ¶ 11).

Hayes verbally instructed Plaintiff to cease calling her former manager, Sandra Anthony, at her new job. (Ex. B, Wolter Aff. at ¶ 40; Ex. D, Hayes Aff. at ¶ 12). Anthony left her employment with Pulaski County to work for the City of Little Rock. (Ex. B, Wolter Aff. at ¶ 41). Anthony notified Wolter and Hayes that Plaintiff had contacted her multiple times regarding work protocol instead of communicating with Hayes. (Ex. B, Wolter Aff. at ¶ 42; Ex. D, Hayes Aff. at ¶ 13). Plaintiff was, in essence, asking Anthony to second-guess decisions made by Hayes, who now holds Anthony's former position. (Ex. B, Wolter Aff. at ¶ 43). After Hayes informed Wolter of the incident, Wolter instructed Plaintiff that disrespect and insubordination of her managers would not be tolerated. (Ex. B, Wolter Aff. at ¶ 44).

On September 28, 2007, Hayes sent Wolter an email stating that she was no longer able to tolerate Plaintiff's offensive body language and gestures, such as rolling her eyes, sighing and

displaying her irritation at being approached by Hayes.  (Ex. B, Wolter Aff. at ¶ 45; Ex. D, Hayes Aff. at ¶ 15).  Hayes expressed that she could no longer involve Plaintiff in group projects because doing so would expose the department to her negative behavior.  (Ex. B, Wolter Aff. at ¶ 46; Ex. D, Hayes Aff. at ¶ 16).  The PCTO terminated Plaintiff's employment on October 1, 2007 citing "unprofessional and insubordinate behavior."  (Ex. B, Wolter Aff. at ¶ 47).

      II.      <u>Standard for Summary Judgment</u>

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues.  *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979).  The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no

> genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

  III. <u>Discussion of the Law</u>

  A. Disparate Treatment

Plaintiff filed suit against the Defendant alleging that she was discriminated against in violation of her rights under Title VII based upon her race and in retaliation for filing a claim of discrimination. In order to establish a prima facie case of disparate treatment, Plaintiff must show she (1) was a member of a protected class, (2) was qualified to perform her job, (3) suffered an adverse employment action, and (4) was treated differently from similarly-situated non-class member employees. *Thomas v. Corwin,* 483 F.3d 516, 529-530 (8th Cir. 2007) (citing *Hesse v. Avis Rent A Car Sys., Inc.*, 394 F.3d 624, 631 (8th Cir. 2005)).

Because Plaintiff has failed to present direct evidence of discrimination, the Court will analyze her claims under the *McDonnell Douglas* analytical framework. First, Plaintiff must establish a prima facie case. Second, if the Plaintiff establishes a prima facie case, the Defendant must rebut the presumption of discrimination by producing evidence that the Plaintiff was terminated for a legitimate, nondiscriminatory reason. Third, if the Defendant carries this burden, Plaintiff is entitled to the opportunity to show that the Defendant's articulated reason was in fact

"not the true reason for the employment decision" and a "pretext for discrimination." *Kim v. Nash Finch Co.,* 123 F.3d 1046, 1056 (8th Cir. 1997) (internal citations omitted). "At the summary judgment stage, under the 1991 amendments to Title VII, the issue is whether the plaintiff has sufficient evidence that unlawful discrimination was a motivating factor in the defendant's adverse employment action. If so, then the presence of additional legitimate motives will not entitle the defendant to summary judgment. *McCullough v. University of Arkansas for Medical Sciences,* 559 F.3d 855, 860-861 (8th Cir. 2009) (internal citations omitted).

Defendants argue that Plaintiff has failed to show that she suffered an adverse employment action and that she was treated differently than other employees. As Plaintiff admits, her "complaint is that her authority was undermined by the Defendant's action of publishing her probationary status, and that the lack of confidence from her employees was so prevalent that it adversely affected her even after she was given the permanent position." (Pl's Response to Mot. For Summ. Judg. at p. 4). Although Plaintiff acknowledges that other employees, some white, have been placed on acting status, the Defendant has never published the employees' status to co-workers. Plaintiff contends she was adversely affected by the publishing of the acting title because the information undermined her position. *Id.*

Defendant argues that the email is not an actionable adverse employment action and that the Plaintiff has failed to present any evidence that the conduct of her coworkers as a result of the email created a hostile work environment. Both parties cite *Davis v. KARK-TV*, 421 F.3d 699 (8th Cir. 2005). In *Davis*, the court found that the plaintiff had not suffered an adverse employment action when her position as a teleprompter was eliminated and she was transferred to a camera operator position which was only available during the evening shift. The court stated:

> An adverse employment action is a tangible change in working conditions that produces a

>material employment disadvantage.  Termination, reduction in pay or benefits, and changes in employment that significantly affect and employee's future career prospects meet this standard, but minor changes in working conditions that merely inconvenience an employee or alter an employee's work responsibilities do not.

*Id.* at 706 (quoting *Sallis v. Univ. Of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005)).

The Court finds that the email sent by the Defendant publishing Plaintiff's promotion was not an adverse employment action as a matter of law.  The email merely stated that Plaintiff was the "Acting Delinquent Tax Collections Supervisor."  It did not state that Plaintiff was on probation for work-related issues.  The email was congratulatory in nature.  Plaintiff subsequently completed the evaluation period for the position and the term "acting" was removed from her title.  There is no evidence, except Plaintiff's perception, that the email undermined her authority with the employees she supervised.  Such skeletal allegations, unsupported with specific facts or evidence, are insufficient to create a genuine issue of facts so as to preclude summary judgment.  *See Thomas v. Corwin*, 483 F.3d 516 (8th Cir. 2007).

Further, Plaintiff has not shown that she was treated differently than non-class member employees who were similarly situated.  She concedes that white employees have been placed in an "acting" status when awarded a promotion.  Plaintiff's only complaint is that an email was not distributed stating that the non-class member was placed in "acting" status.  However, she has no evidence that these particular employees were similarly situated at the time of their promotions, i.e., counseled by superiors regarding excessive absences, uncooperative behavior, attitude and communication skills, etc.  Moreover, as stated above, there is no evidence that the Defendant's choice to send an email publishing Plaintiff's promotion to an "acting" position was a "less favorable" action than Defendant's failure to send an email regarding a white supervisor's promotion to an "acting" position.

In the alterative, even if Plaintiff established a prima facie case by alleging that the adverse employment action taken against her was her termination (and not the email), the Defendant has articulated a legitimate non-discriminatory reason for her termination. "To survive summary judgment at the third stage of the McDonnell Douglas analysis, 'the rule in [the Eighth] Circuit is that an [employment-discrimination] plaintiff can avoid summary judgment only if the evidence considered in its entirety (1) creates a fact issue as to whether the employer's proffered reasons are pretextual and (2) creates a reasonable inference that [a prohibited motive] was a determinative factor in the adverse employment decision.'" *Cronquist v. City of Minneapolis,* 237 F.3d 920, 926 (8th Cir. 2001) (quoting *Rothmeier v. Inv. Advisers, Inc.*, 85 F.3d 1328, 1336-37 (8th Cir. 1996 )). Plaintiff has failed to meet this burden.

Defendant claims that Plaintiff was terminated for unprofessional and insubordinate behavior. Debbye Wolter stated in her affidavit that Plaintiff was terminated after specific incidents of insubordination: the failure to attend the September 2007 tax season deadline meeting and Plaintiff's repeated calls to her prior supervisor, Susan Anthony, to second-guess decisions made by Hayes. After formal notices of insubordination to Plaintiff, Wolter stated that Plaintiff continued to show disrespect to her supervisor Melissa Hayes and was, therefore, terminated. (Def.'s Ex. B, Wolter Aff. at p. 3-6).

Based upon the Defendant's non-discriminatory reason for Plaintiff's termination, Plaintiff must show "both that the proffered reason was false, and that discrimination was the real reason." *Kim*, 123 F.3d at 838 n.5 (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 2751-52 (1993)). Plaintiff admits that she missed the September 2007 tax meeting and that she made calls to Anthony to second-guess decisions made by Hayes. Plaintiff

has failed to come forward with any evidence to show that her termination was based upon her race. "We do not 'sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination." *Cronquist*, 237 F.3d at 928 (quoting *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 781 (8th Cir. 1995)). Therefore, the Court finds that there is no evidence from which a reasonable jury could conclude that the Defendant discriminated against Plaintiff on the basis of her race. Summary judgment is appropriate as to Plaintiff's claim of race discrimination.

      B.    Retaliation

Title VII prohibits retaliation against an employee who files charges of discrimination. 42 U.S.C. § 2000e-3(a); *Thompson v. Bi-State Development Agency*, 463 F.3d 821, 826 (8th Cir.2006). To establish a prima facie case of retaliation, Plaintiff must present evidence that 1) she engaged in activity protected under Title VII; 2) an adverse employment action was taken against her; and 3) a causal connection existed between the two. *Id.* The defense may rebut a plaintiff's claim by advancing a legitimate, 'non-retaliatory reason for the adverse employment action. "If the defendant can show a legitimate reason, the plaintiff must show that the given reason was only a pretext for discrimination." *Id.*

Plaintiff claims she was retaliated against for filing an EEOC Charge of Discrimination on August 17, 2007. Plaintiff claims that her discharge on October 1, 2007 was in retaliation for filing the EEOC Charge. As evidence of retaliation, she points out that she did not receive any formal reprimands prior to filing her Charge. However, within six weeks of filing her Charge she received two formal reprimands and was terminated.

Assuming that Plaintiff has met her burden of proving a prima facie case of retaliation, the Defendant has also come forward with a legitimate non-discriminatory reason for Plaintiff's termination.  Again, the Defendant points out that Plaintiff failed to attend the September 2007 tax deadline preparation meeting, made repeated calls to her prior supervisor, Susan Anthony, to discuss work protocol instead of discussing the issues with Hayes, and after formal notices of insubordination, continued to show disrespect to Hayes.  There is also evidence from Debra Buckner that Plaintiff's failure to attend the tax season preparation meeting was sufficient cause alone to terminate Plaintiff's employment.  (Ex. C., Buckner Aff. at 15).  The Defendant contends that Plaintiff is not insulated from recourse for insubordinate behavior because she filed an EEOC Charge.

"An employee's attempt to prove pretext or actual discrimination requires more substantial evidence, however, because unlike evidence establishing the prima facie case, evidence of pretext and discrimination is viewed in light of the employer's justification." *Sprenger v. Fed. Home Loan Bank*, 253 F.3d 1006,1111 (8th Cir. 2001) (citing *Stuart v. General Motors Corp.*, 217 F.3d 621, 635-36 (8th Cir. 2000)).  Merely disputing the reason proffered by the employer is not enough to show that reason is a pretext for discrimination.  The Plaintiff must show that the reason given was false and that discrimination is the real reason behind the adverse employment action.  *Stuart v. GM Corp.*, 217 F.3d 621, 634 (8th Cir. 2000)(citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993)).

The only evidence Plaintiff has presented to show pretext is her statement that Hayes told her in September 2007 her "EEOC claim was bad for the PCTO."   (Pl.'s Aff. at p. 3).  The Eighth Circuit has "carefully distinguished between comments which demonstrate a

13

discriminatory animus in the decisional process ... from stray remarks in the workplace, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process." *Mohr v. Dustrol, Inc.*, 306 F.3d 636, 640-41 (8th Cir. 2002) (internal quotation omitted). While Hayes may have been involved in the decision to terminate Plaintiff, there is no evidence that Hayes' statement was related to the decisional process. *See Twymon v. Wells Fargo & Co.,* 462 F.3d 925, 935 (8th Cir. 2006) ("remarks were stray comments, despite the fact that they were made by decisionmakers"); *Saulsberry v. St. Mary's Univ. Of Minn.*, 318 F.3d 862, 867-68 (8th Cir. 2003). This alleged statement is not sufficient evidence to create a jury question as to whether the adverse action taken against her was motivated by the filing of her EEOC charge. Summary judgment is appropriate as to Plaintiff's claim of retaliation.

 IV. <u>Conclusion</u>

The Motion for Summary Judgment filed by the Defendant (Docket # 46) is GRANTED. The Clerk is directed to close the case.

IT IS SO ORDERED this 27th day of July, 2010.

                      */s/ James M. Moody*
                      James M. Moody
                      United States District Judge